Next case in our call this morning is agenda number nine, case number 107750. In re Jonathan C.B. a minor. People of the state of Illinois versus Jonathan B. Counsel may proceed. May it please the court, counsel, my name is Katherine Hart from the office of the state appellate defender in Springfield and I represent Jonathan C.B. In Champaign County the practice of bringing children to court in chains is so common that no one remarked upon Jonathan's shackles until it was time for him to testify. How do we know that? We know that several ways. Specifically as to Jonathan, right before Jonathan got up to testify the court specifically said, and I quote, okay, you may step up, you may take off the shackles. We also know by reference to Jonathan's co-defendant, George W., this George W.'s petition for leave to appeal is currently pending before this court in 108278. George was not tried with Jonathan, but in George's record also before he testified the trial court said that they could remove his shackles. Is that part of this record? It's not in Jonathan's case, Your Honor. Is there anything else that references this? The only reference in Jonathan's record to the shackles is the trial court's directive to remove them prior to his testimony. Thank you. We also know that it's common practice to shackle juveniles in Champaign County because of Justice Appleton's comment and dissent, and I quote, in Champaign County defendants wear chains as a seeming matter of course. Furthermore, the juvenile defense assessment, which was published in 2007 and which is cited in my brief, notes that in half the counties surveyed, juveniles entered the courtroom wearing shackles and belly chains. There was no objection to the shackling, was there? There's no objection, Your Honor. So is this a plain error case? This is a plain error case, yes. The shackling was not objected to nor preserved as error in any way, but the unpreserved nature of this issue does not detract from the seriousness of the error which occurred. In fact, it emphasizes it because the routine shackling of detained juveniles is so pervasive throughout the state of Illinois that it is rarely, if ever, objected to. These are our children whom we claim are not part of a criminal system or being tried in chains. This court and the United States Supreme Court have stated in the strongest language possible, using terms such as exceptional circumstances, clear necessity, and impermissible, that absent manifest need, a defendant may not be shackled. The failure to follow the procedures set forth in People v. Boots before allowing a defendant to be shackled during trial constitutes a due process violation. The shackling of Jonathan C.B. without an individualized determination of necessity was a due process violation. When a shackled defendant appears before the court, it reinforces the presumption of guilt. Courts of review have a responsibility to the system, to the children brought into the system, to correct the due process violations that occur every day. Any significance that this was a bench trial in which the trial judge, I believe, didn't even know that the defendant was shackled until later in the proceedings, right? Any significance to that? We don't know that the trial court didn't know that the juvenile was shackled until he testified. That is a claim that the state makes, and it's brief. But in fact, the trial court was clearly aware that Jonathan was shackled because the court is the one who said, take off his shackles. The fact that it's a bench trial is not important. This court in In Re Staley said that even, which was a bench trial, that even when it's a bench trial, you may not shackle a defendant absent an individualized determination of necessity. Is there a jury in Staley? In Re Staley was not a jury, Your Honor. It was a bench trial. You are requesting us to go farther than this court did in People v. Allen to require that the court sui sponte conduct a booze hearing without any objection from defendant or defense counsel. Is that correct? Yes. Not only are we arguing that there was plain error in this case, but also that in juvenile cases, that the trial court should have a responsibility to hold a booze hearing every time a juvenile is brought to court in shackles. Without any objection. Without any objection. That's correct. This court should review the propriety of shackling Jonathan at trial despite his attorney's failure to object under the plain error statute, but both prongs of plain error apply in the instant case because it was a closely balanced case with a clear error and the integrity of the judicial process was impacted by this error. As numerous courts have held, the use of shackles without a hearing undermines the integrity of the judicial process. The trial courts of Illinois are not listening to this court, which has repeatedly told them that a defendant cannot be shackled without first holding a hearing. What does it say about our juvenile court system that many of the juveniles coming from detention are shackled as a matter of course? Aren't juveniles entitled to the same rights as adults? Doesn't the Juvenile Court Act mandate that? Hasn't this- How do we know from this record that this is happening? What is the source of the evidence admissible to this case that says juveniles are being routinely shackled? In this particular case, we know that Jonathan was shackled because the trial court tells them to take off the shackles prior to testifying. As I mentioned earlier, we also know by reference to George W's record that PLA is currently pending before the court. The record site is in the PLA on page 15. If you'd like me to repeat the number, I'm happy to do so. You're suggesting we can consider a PLA in another case? In People v. Allen, the record was likewise scanty as to the electronic stun belt that the defendant was wearing in that case. And this court did take notice of other cases that were pending in, I believe that was Will County, in the second district, to find that this was occurring, that it was the sheriffs or the detention centers in that case, it was a jail. It was their practice to bring defendants to court in a stun belt. I think there's certainly enough evidence in the record from Jonathan's case, from reference to George W's case, from the juvenile defense assessment, and from Justice Appleton's dissent, where he notes that defendants are brought to court. And he doesn't specify juveniles, but defendants are brought to court in Champaign County and Chains. But does he know, where does that come from? I believe that that comes from. Is that part of the record or what? It comes from other cases that have come before him. In fact, he cites to People v. Barney, where the fourth district did not find plain error, but it's another case where a defendant was brought to court in Chains. Is that a juvenile? That is not a juvenile case. Why are we shackling detained juveniles without an individualized determination of necessity, if the proceedings they are appearing in are not criminal? The pervasive shackling of children in court forces the question, what is happening in the juvenile courts of Illinois? Forty years ago, in In Re Fucini, this court stated, we see no useful function to be obtained by adding still more formality into the juvenile process. A jury trial with all the clash and clamor of the adversary system that necessarily goes with it, would certainly invest a juvenile proceeding with the appearance of a criminal trial, and create in the mind and memory of the child the same effect as if it were. What was in the mind and memory of Jonathan Sepe when his trial was over? Does he remember being charged with criminal sexual assault when the state decided to prosecute him? What about when he was detained in the Champaign County Juvenile Detention Center, then tried and shackles? Does he remember the state's case against him and testifying on his own behalf? Counsel, from this record, in this case, do we know whether the shackles were replaced after the child testified? The only reference to shackles, Your Honor, are just prior to Jonathan's testimony. Now, Jonathan's testimony- It occurs to me, Counselor, that had the trial court not said anything, you would have no record to indicate that this minor was even shackled, is that correct? That's correct, but as I initially argued- I believe that shackling of juveniles in court is so pervasive that- But the record doesn't- The record does not say anything more than that. The court directs that shackles to be removed. That's correct. What will be in his mind as he registers as a sex offender, possibly for the rest of his life? I think Jonathan would be surprised to learn, after the clash and clamor of the adversary system that he experienced, that he was not criminally prosecuted. As of today, Wednesday, January 13, 2010, there are a number of statutes in the state of Illinois that equate an adjudication of delinquency with a criminal conviction. Some of these statutes are not simply collateral, such as SORA, the Sex Offender Registration. There's also the escape statute and aggravated unlawful use of weapons. When juvenile adjudications are treated as convictions, then juveniles have the worst of both worlds. One in which, unlike their adult counterparts, they are denied a right to a jury trial, yet their adjudications are deemed prior criminal convictions. That is what this court stated in People v. Taylor. Juvenile prosecutions do not look exactly like adult prosecutions, but they are criminal prosecutions nonetheless. When the state files a delinquency prosecution, it is a criminal prosecution, where the juvenile is often detained in a jail or detention center prior to trial, then brought to court in chains, tried with the assistance of counsel and all the evidentiary rules of adult criminal prosecutions, and if found guilty, the juvenile may be sentenced to jail. Juvenile trials may be open to the media, and juvenile DNA is harvested and stored in case of future criminal behavior. Like others subject to criminal prosecution, a juvenile's conviction subjects him to higher penalties if he escapes from detention, and juveniles must register, sometimes for life, on public registries and non-public registries. The Juvenile Court Act rehabilitates children and subjects them to criminal prosecution. This court can recognize the criminal nature of juvenile proceedings. Ms. Hart? I have a question. If juveniles are extended juvenile hearings, is permitted the right to jury trial because a juvenile may be subject to punishment after the age of 21, so here, why Jonathan's sentences, when his sentences determinate upon his 21st birthday, why then should we find that he has the right to a jury trial before? I'm sorry? Does he not have a right in extended juvenile hearings? He was not prosecuted under the extended juvenile jurisdiction statute, Your Honor. This court can recognize the criminal nature of juvenile proceedings, give juveniles the extra protection and safety of a jury trial, where the juvenile chooses to proceed by jury, and still maintain a separate juvenile court system for juveniles. One is not exclusive of the other. This juvenile would not want to have been prosecuted under the EJJ or as a criminal defendant, right? No, nor would, I mean, he could have opted to proceed as an adult, but he was not eligible. There's an equal protection claim saying that juveniles in juvenile cases are not, they're similarly situated with EJJ juveniles and with adult sex offenders, but those groups receive adult criminal sentences, right? That's correct. And that's a big difference, isn't it, in keeping with what Justice Burke just said, an adult criminal sentence versus being in a juvenile detention facility until the age of 21? There is a difference, but jail is jail. And not all adult criminal prosecutions look exactly the same. Some adults who are prosecuted with sex crimes don't receive jail at all, or they receive small sentences. But this juvenile never, unlike the EJJ and adult criminal sex offenders, never faced the possibility of an adult criminal sentence. That's correct. And that's a pretty big distinction, isn't it? It is a distinction, but that doesn't negate the fact that Jonathan was criminally prosecuted. There is a spectrum of some juveniles have, you know, they're subject to probation. Some adults are subject to probation. Some juveniles are subject to jail. Maybe not in an adult facility, but jail nonetheless. And some adults are subject to jail. We can have a juvenile court system that recognizes that we essentially, we're criminally prosecuting them. You would admit that to date this court has rejected the arguments raised by a respondent concerning the right to a jury trial by a juvenile, is that right? This court has to date rejected the equal protection and the federal due process argument. I don't believe that this court has truly looked at the juvenile jury trial right under Article 1, Section 8, and with the specific arguments that were made in this case. Are you espousing a jury trial in every juvenile delinquency proceeding, or only in sex offenses? The argument is that all juveniles should be entitled to a jury trial, if they so choose. However, to follow up on Justice Garmon's question, is that there are certain charges that have collateral consequences, like lifetime reporting, no expungement, which may under fundamental fairness principles make it necessary to permit the right to a jury trial. Is that what you're arguing? But you just answered Justice Garmon saying that in all juvenile cases, they have a right, as opposed to those who just have collateral consequences. The argument that is before this court, Argument 3 of Jonathan's brief, is that all juveniles are entitled to a jury trial. Certainly, the argument is even stronger as to juveniles who are charged with sex offenses. But, and as to equal protection and federal due process, those arguments are limited to just sex offenders. But Argument 3 is as to all juveniles, Your Honor. What argument includes all sex offenders? Pardon? Which of your arguments includes all sex, all offenders? Argument 3 includes all juveniles. If this court has no further questions, Jonathan. I just want to talk a little bit about the shackling. In Cook County, and I imagine most of the counties over the state, the sheriff is charged  That's my understanding. And the judge has no say-so in how that defendant will be delivered to court. Is that correct? That's correct. And how they be delivered to court. However, once- So your objection is when he walks through the front door or the back door of the court, and is seated, that something should be done during that period or before he enters the courtroom? This court stated in Peeble v. Allen that it is the court's responsibility to control their courtroom. And when a juvenile- Did the judge in this case do that when he said remove the shackles? That was halfway through the trial, Your Honor. The juvenile shackles, before the juvenile- Did he not know when he noticed the shackles were on the defendant? We don't know. All we know is that Jonathan's shackles were not removed until right before he testified. So he removed the shackles and walked up to the witness chair? That's correct. If this court has no further questions, Jonathan C.B. would respectfully request that this court reverse his adjudication of delinquency on the charge of criminal sexual assault based on the state's failure to prove him guilty beyond a reasonable doubt. In the event it declines to do so, the minor requests that this cause be reversed and remanded for a new trial. May it please the court, counsel, I am Gopi Kashyap from the Illinois Attorney General's Office on behalf of the people of the state of Illinois.  As this court has noted, the only reference in the record to shackling occurs before respondent comes up to testify. And what's important is immediately before that, respondent's cousin, Destiny Nesbitt, completes her testimony, and then respondent's counsel asks the court, the trial court,  Then counsel comes back. It's unknown whether respondent went with him. But counsel comes back and says, I call the respondent. The trial judge then says, okay, you may step up. And when he steps up, you may take off the shackles. Sir, you may go ahead and approach the bench. The trial court in this case, as soon as it became aware of the shackles, ordered their removal. And respondent did not testify with those shackles on. Under People v. Allen, where this court held that unless the respondent, and it's respondent's burden to show this and to provide the record to show this, that unless respondent can show that his ability to consult his counsel was compromised or the presumption of innocence was compromised or the dignity of the proceedings was compromised, if he fails to object at trial, that failure to object constitutes forfeiture of the issue, and this court cannot review it. It's important to note that this was a bench trial. And, yes, in Inres Daly, this court stated that even in bench trials, trial courts have the responsibility to conduct abuse hearings before they shackle defendants. And in that case, it was a juvenile. But that court also noted that the presumption of innocence is not the only reason for asking courts to conduct abuse hearings. It is because of the ability to consult counsel, and it's because of the dignity of the proceedings. In this case, where it is a bench trial, the presumption of innocence rationale is not present because the trial court is presumed to consider only competent evidence. And, again, Respondent has failed to provide the court with a record that shows that it's routine practice or that he was unable to consult with his counsel. Furthermore, Respondent has failed to show that the evidence was closely balanced in this case. Accordingly, unless this court has questions about that prong, we'll rest on our briefs. We'll turn to the jury trial issue. Respondent, by asking this court to hold that the Juvenile Court Act require or that juveniles are entitled to a jury trial under the Illinois Constitution and the United States Constitution, is asking this court to overturn controlling precedent, which holds that neither constitution requires jury trials and juvenile delinquency proceedings. In Fuccini and Presley, this court held that juveniles have no due process right to a jury trial because juvenile proceedings are fundamentally different from criminal prosecutions. In McIver, the United States Supreme Court confirmed that holding and stated that a jury trial is not an essential component of due process for juveniles and, therefore, it is not fundamentally unfair to deny them a jury trial. And just last May, in Konetsky, this court reaffirmed McIver and held that juveniles charged with sex offenses have no due process right to a jury trial. For the past ten years, since the amendments and since the dissent in Geo, this court has consistently construed juvenile delinquency proceedings under the Act as remaining fundamentally different from criminal prosecutions. Counsel? Yes. With regard to the offense, like in this particular matter, it's a sexual offense and there are collateral consequences, lifetime reporting and things like that, just as under the criminal code. Don't you think that the juvenile should have an opportunity to have a jury trial under those circumstances? Because after the punishment is made at the age of 21 or whatever the years is, is that they still have to go have a lifetime of reporting. No, Your Honor. As this court held in Konetsky, the registration requirements on juveniles are simply not as burdensome as they are on adults. First of all, But by then he's an adult and lifetime reporting. But he has the ability to petition after five years for termination of that registration. That opportunity is unavailable to adults. And additionally, respondents' registration information is not available to the general public. It is only disclosed to school officials and persons that perhaps could be harmed by him in the future. So in that respect, the legislature has, again, distinguished juveniles from adults. And therefore, as this court has held, juvenile delinquency proceedings are fundamentally different from criminal prosecutions. And again, in the last 10 years, this court has repeatedly affirmed that juvenile delinquency proceedings do not aim to punish, but rather to protect. In fact, this court held that in 2007 in Henry Rodney H. And furthermore, that this rehabilitative purpose remains a chief goal of the act that is more important in juvenile proceedings than in criminal prosecutions. In these past 10 years, this court has repeatedly interpreted the act as such. And the legislature has done nothing to change that interpretation. Thus, the principles of stare decisis apply, especially here where we're interpreting a statute. And this court should reject respondents' invitation to overturn its prior interpretation of the act. There are significant differences between juvenile trials and criminal prosecutions. This court noted all of these differences in Henry Rodney H. and Konetsky. It's important that in this case, the impact on respondents' liberty was simply not the same as it would have been for an adult. An adult convicted of criminal sexual assault and attempt to robbery would have received a sentence of four to 15 years for the sexual assault, consecutive to a two to four years for the attempt to robbery. And importantly, plus at least three years and up to life, an MSR term, because of the criminal sexual assault. He would be in the Department of Corrections, and he would have limits on when he could obtain parole. In contrast, respondents' maximum sentence is five years for two violent crimes. In the Department of Juvenile Justice, which is statutorily required to provide individualized treatment, to periodically re-examine juveniles, to develop plans for their treatment, and provide them, they also provide them the continuous opportunity for parole, and they can continuously seek to terminate their wardship. In this regard, and many others cited in our brief, juveniles are simply not the same as adults, and they do not face the same severe consequences. Juveniles have, or trial courts are vested with a broader role in juvenile prosecutions, or proceedings, excuse me. They can direct the filing of a petition through the state's attorney, and they are intended to guard the minor's interests. As this court just noted, with respect to the equal protection argument, juveniles simply don't face the same consequences, and respondents in particular did not face the same consequences as an adult would have. He did not have an adult sentence imposed on him. In terms of the Illinois Constitution, which counsel just spoke about, and stated that this court hasn't addressed that issue, that's not entirely true. In Fucini, this court held that juvenile proceedings are fundamentally different from criminal prosecutions. In Presley, decided approximately nine months later, the juvenile again argued under Article I, Section 8, that juveniles have a right to a jury trial. The Presley court stated that that argument was foreclosed by the opinion in Fucini, and the opinion in Fucini states that juvenile proceedings are fundamentally different from criminal prosecutions. If they're fundamentally different from criminal prosecutions, there's no way they could qualify as a criminal prosecution under Article I, Section 8, and therefore that decision applies, and that is precedent. One moment, Your Honors. If this court has no further questions, the people respectfully request that this court affirm the judgment of the appellate court. Thank you. I would like to briefly address one issue, which is that the shackling issue, it's not just about what the trial court saw. The United States Supreme Court in Deck v. Missouri specifically stated there were three reasons not to shackle without a hearing. The first is that the defendant is innocent until proven guilty, and that shackles undermine that presumption. The second one is the defendant's ability to communicate with counsel, and the third one is that it undermines the integrity of the judicial process. The court said in Deck v. Missouri, the practice will often have negative effects, but like the consequences of compelling a defendant to wear prison clothing or forcing him to stand trial while medicated, those effects cannot be shown from a trial transcript. As I pointed out in my reply, we do know that Jonathan had a calm and even speaking voice while testifying, something which was commented on by the trial court in a negative way. We don't know that his flat affect wasn't because he was shackled. I think Justice Appleton's dissent in the opinion from the Fourth District most cogently expresses the problems with shackling a juvenile, regardless of whether the trial court saw it from the second he walked into the courtroom or not. And that is, how does he know that the trier of fact is a rational impartial trier of fact, who genuinely presumes he is innocent until the state proves him to be guilty beyond a reasonable doubt? He was a child who was brought to court and tried in chains. That is not something that this court has ever allowed. Since In Re Staley and People v. Booth, this court has stated in the strongest possible language that a defendant should not be shackled when brought to trial without an individualized determination of necessity. That was not done in this case. Plain error occurred and Jonathan C.B. deserves a new trial because of that error. In addition, and Justice Carmeier asked you earlier about the sua sponte nature of requiring the court to hold a hearing, even if there's no objection, you would add to that that there is a responsibility of the trial court, sua sponte, to in every case inquire whether the respondent is shackled. In every juvenile case, when a juvenile is brought to trial in shackles, the trial court... No, I'm saying in every case because it could be in this case that the trial judge didn't know about until the minor gets up to testify. And that's a possibility. We don't know. But if that is in fact true, then what you are saying is the trial court should have in every case or should in every case say, is this respondent shackled and then hold a hearing. I'm just trying to get down what you're... No, our request for a per se rule is limited to juveniles. I understand that. But I'm saying the per se rule in addition to holding hearings, even if the trial judge comes into the courtroom and doesn't know whether the respondent is shackled or not, the trial judge is required to make that inquiry and then hold a hearing. Is that what you're saying? Again, Your Honor, we believe that the per se rule is in place for juveniles. Because of the specific nature... I don't think you understand my question. I do understand your question. I wanted to first say that we're asking for the per se rule just for juveniles, Your Honor. I understand. When this trial court in the juvenile court saw the juvenile defendant, you know it's a juvenile. And I think although we don't know absolutely from the record whether this trial court knew if Jonathan was shackled from the second he was brought to court, I think it's a little disingenuous. These are not huge courtrooms. A juvenile is shackled. It's fairly obvious that they're shackled. But, yes, in all juvenile cases, the trial court should have a duty to hold a hearing, with or without objection, when a juvenile is shackled at trial. And the court should make that inquiry, even if the court comes into the courtroom and can't really see whether the juvenile is shackled or not? We believe that this inquiry should be... It doesn't take very long, but this inquiry should always occur, yes. Okay. Thank you. If this court has no further questions... Case number 107750, Henry Jonathan, CB, will be taken under advisement as agenda number...